UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLIE EDGMON, by and through his next friend, THOMAS DEGROOT,<br><br>                Plaintiff,<br><br>  v.<br><br>SUSAN E. BIRCH, in her official capacity as director of the Washington State Health Care Authority; COORDINATED CARE OF WASHINGTON, INC.; and SOUND,<br><br>                Defendants. | NO.<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## I.  OVERVIEW

1. Plaintiff Charlie Edgmon, by and through his next friend, Tom DeGroot and his attorneys, Susan Kas of Disability Rights Washington and Andrew Biviano of the Law Office of Andrew S. Biviano, files this action against the Washington State Health Care Authority ("HCA"), Coordinated Care of Washington, Inc. ("CCW"), and Sound to remedy their failure to provide him with necessary services and supports in accordance with their legal obligations and established standards of care.

2. Plaintiff brings claims under 42 U.S.C. § 1983, Title XIX of the Social Security Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act, for declaratory and injunctive relief to correct Defendants' failures to provide Plaintiff with

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ・ Fax: (206) 957-0729

necessary supports and services in accordance with legal standards and the standards of care set forth in Defendants' contracts and policies.

3. Plaintiff is an eighteen-year-old young man with significant intellectual and physical disabilities as well as behavioral health needs. Plaintiff is a Medicaid beneficiary who has been participating in the Medicaid-funded Wraparound with Intensive Services (WISe) program operated by Defendants. WISe is mandated to provide care coordination with in-home behavior support services and mobile crisis services to Medicaid-eligible children and youth under the age of twenty-one who have significant behavioral health conditions. Through a 2014 federal class action Settlement Agreement, the WISe program was established to enable young people to "live and thrive in their homes and communities, as well as to avoid or reduce costly and disruptive out-of-home placements…"

4. Plaintiff has been ready to discharge from Seattle Children's Hospital since at least August 2021. However, because Defendants have not met their legal obligations to arrange and provide an array of mandatory Medicaid-funded services that Plaintiff needs in order to safely discharge, Plaintiff has been denied a safe discharge plan and has been warehoused on a locked unit at Seattle Children's Hospital (SCH) for the last seven months.

5. Plaintiff has been denied adequate care and treatment because of his intellectual and developmental disability, in violation of federal laws prohibiting discrimination on the basis of disability, and in violation of the integration mandate set forth in the Supreme Court's *Olmstead* decision. He has suffered and continues to suffer harm due to being separated from his family and isolated from community activities.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ・ Fax: (206) 957-0729

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, and under 28 U.S.C. § 1343(a)(3) and (4), which confer on the federal district courts original jurisdiction over all claims asserted pursuant to 42 U.S.C. § 1983 to redress deprivations of rights, privileges or immunities guaranteed by Acts of Congress and the United States Constitution. Plaintiffs' claims for declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Western District of Washington and Defendants may be found here.

## III. PARTIES

1. ***Plaintiff Charlie Edgmon*** is an eighteen-year-old young man who is enrolled in Washington State's Medicaid-funded Apple Health insurance program and has been receiving services through the Defendants' WISe program. Plaintiff is from and is currently residing in King County, in this judicial district. Pursuant to Federal Rule of Civil Procedure 17(c)(2), Plaintiff is represented in this action by his Next Friend, Thomas DeGroot. Thomas DeGroot is sufficiently familiar with the facts of Plaintiff's situation and is dedicated to fairly and adequately representing Plaintiff's interests in this litigation.

2. ***Defendant Susan E. Birch*** is the Director of the Washington State Health Care Authority (HCA), a state agency. Director Birch is named in her official capacity for actions taken under color of state law as HCA Director for declaratory and prospective injunctive relief. HCA administers and purchases Medicaid-funded health care for millions of Washington

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 3

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ᐧ Fax: (206) 957-0729

residents, including Plaintiff. Director Birch is responsible for ensuring that Washington's Medicaid and behavioral health services are administered in a manner consistent with state and federal law.

3. ***Defendant Coordinated Care of Washington, Inc.*** is a Washington for-profit corporation with a principal address of 550 N. Meridian, Ste 101, Tacoma WA, 98402. It is a Managed Care Organization (MCO) that contracts with Defendant HCA to provide Plaintiff with Medicaid-funded WISe services and any other medically necessary care and treatment.

4. ***Defendant Sound*** is a Washington nonprofit corporation with a principal address of 6400 Southcenter Blvd, Tukwila, WA, 98188. Defendant Sound is a mental health agency that contracts with Defendant Coordinated Care of Washington, Inc. and is certified by Defendant HCA to provide Medicaid-funded WISe services to Plaintiff.

## IV.   BACKGROUND

5. In 2014, a federal district court approved a settlement agreement for a class action lawsuit on behalf of Medicaid-eligible children and youth with serious mental health conditions *See T.R. et. al v. Dreyfus*, WA W.D. No. C09-1677-TSZ. The lawsuit was brought under the federal Medicaid Act's Early and Periodic Screening, Diagnostic, and Treatment (EPSDT) mandate, which requires that states provide and arrange for such health care, treatment, or other measures to treat or ameliorate the health conditions of children under the age of twenty-one. 42 U.S.C. § 1396a(a)(10)(A); 42 U.S.C. § 1396d(a)(4)(B).

6. The EPSDT mandate covers any service that qualifies under one of the twenty-eight categories of "medical assistance" enumerated in 42 U.S.C. § 1396d(a). 42 U.S.C. § 1396d(r)(5). These categories include "any medical or remedial services (provided in a facility, a home, or other setting) recommended by a physician or other licensed practitioner of the healing

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 4

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ・ Fax: (206) 957-0729

arts within the scope of their practice under State law, for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level." 42 U.S.C. § 1396d(a)(13)(C); 42 C.F.R. § 440.130(d).

7. In addition to requiring payment for services, the EPSDT mandate requires that states take "proactive" steps to provide and arrange for necessary medical assistance, which must also be "reasonably effective."

8. Pursuant to the *T.R.* Settlement Agreement, the State of Washington established the WISe program in order to keep children safely at home where they would be able to grow into healthy and independent adults. The parties agreed that the WISe program would deliver a service array consisting of intensive care coordination, intensive home- and community-based services that include behavior assessments and supports, and mobile crisis intervention and stabilization services. The implementation consisted of obtaining supplemental funding, providing additional training and coaching, amending contracts, establishing a quality assurance plan, and developing a "Service Delivery, Policy, Procedure and Resource Manual" (hereinafter "WISe Manual") that describes the WISe program standards and specific service requirements.

9. Defendant HCA has contractually delegated the responsibility to provide WISe services in accordance with the WISe Manual to Defendant CCW, who in turn, contracted with Defendant Sound to deliver WISe to eligible participants, including Plaintiff.

10. Defendant CCW is a managed care organization (MCO) which receives a monthly payment from HCA for each MCO member as reimbursement for delivery of contracted services. HCA pays CCW a "case rate" of approximately $3,000 per month for each WISe participant enrolled with CCW, as a supplement to the regular monthly per member MCO rate. In order to receive the additional WISe case rate supplement, Defendant CCW must report

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 5

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ᐧ Fax: (206) 957-0729

service encounters by a contracted WISe provider. The MCO must attest that the provider has received WISe training and is certified to deliver treatment, therapy, case management, medication, peer support, and crisis outreach services. Defendant CCW reimburses Defendant Sound with 94% of the HCA WISe rate.

11. The WISe Manual describes the standard of care for WISe providers and is consistent with the standards for intensive home and community based wraparound programs for children and youth with significant behavioral health needs. As the WISe Manual explains, WISe is designed for youth who, like Plaintiff, have intensive and complex behavioral health needs, and should be provided in "timely, creative, individualized, and flexible ways."

12. The WISe Manual specifies that intensive care coordination should continue throughout five phases of engagement, assessing, teaming, service planning and implementation, and monitoring and adapting. The Manual states that WISe providers are required to "collaborate and include other child serving system partners" including "developmental disabilities support" on the "development of the cross system care plan and [Child and Family Teams], and as indicated by youth and family choice." Child service system partners may include the Developmental Disabilities Administration (DDA) of the Department of Social and Health Services (DSHS), other Medicaid providers, or the Department of Children Youth and Families (DCYF).

13. The WISe provider must facilitate and coordinate services and supports in alignment with the Washington State Children's Mental Health Principles, which are established in the WISe Manual. These principles include prioritizing family and youth voice, choice, and preferences, and "first and foremost" supporting youth to be "safely maintained in, or returned to, their own homes."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 6

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ・ Fax: (206) 957-0729

14. According to the WISe Manual, "direct services" must be provided in settings where the youth is naturally located and whenever needed, including evenings and weekends. Direct services must be available in "the amount, duration, and scope necessary to address the medically necessary identified needs" of each participant. The WISe Manual requires direct services to be available, to include therapy as well as peer supports by others with lived experience who can provide parents and youth role modeling and mentoring. Until January 2022, the Manual further required that available direct services also include an "in-home functional behavioral assessment," as well as "behavior management, including developing and implementing a behavioral plan with positive behavioral supports."

15. Lastly, the WISe Manual requires WISe providers to have "capacity to respond to destabilizing events whenever the need arises." The WISe Manual specifies that mobile crisis services should be available 24 hours a day, seven days a week, by individuals who know the youth's and family's needs as well as their current crisis plan. Under the Defendants' WISe requirements, a WISe crisis plan should include both proactive and graduated strategies to prevent crisis as well as strategies to respond to crises in the most effective and least restrictive manner. It should also be a prevention and response plan that anticipates crises that may occur, includes methods to reduce or eliminate potential precipitating events, and creates individualized responsive strategies by caregivers and members of the youth's team to minimize crisis and ensure safety.

## V.   FACTUAL ALLEGATIONS

16. Plaintiff is a young man with significant behavior support needs. During his childhood, he was diagnosed with Li-Frameni Syndrome and had several brain surgeries, which

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 7

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ᐧ Fax: (206) 957-0729

1  limited his cognitive development and resulted in an intellectual disability. Prior to his current

2  hospitalization, he lived at home with his single mother and two younger siblings.

3      17.     In October 2020, after a series of incidents and a brief hospitalization, Plaintiffs'

4  case manager with DDA referred him to Sound's WISe program and suggested looking into a

5  behavior support service called Applied Behavioral Analysis (ABA).

6      18.     Defendants CCW and HCA provide ABA services but do not contract with other

7  behavior support providers that are not ABA certified. DDA contracts with non-ABA behavior

8  support providers to serve some youth under the age of twenty one but has been phasing out this

9  service. DDA no longer authorizes behavior supports for new clients who, like Plaintiff, were not

10 already receiving positive behavior supports.

11     19.     Plaintiff enrolled in the WISe program in October 2020. Defendant Sound

12 conducted an intake assessment. The assessment noted that Plaintiff had been eloping, engaged

13 in assaultive behaviors, was expressing suicidal ideations, and had been refusing to bathe. The

14 intake assessment also documented that Plaintiff's family had suffered from homelessness for a

15 period of eighteen months, and that Plaintiff's immediate family did not have extended family

16 support.

17     20.     Defendants did not provide Plaintiff a functional behavior assessment or a

18 behavioral plan with positive behavioral supports, as required by the WISe Manual. Defendant

19 Sound provided weekly therapy to Plaintiff, and a parent peer partner to Plaintiff's mother.

20 Although Defendant Sound provided a care coordinator, the care coordinator did not assist in

21 arranging for ABA therapy or other positive behavior supports. A personal care agency initially

22 agreed to provide services but failed to find a caregiver, and Defendants did not assist in

23 addressing the barriers to personal care or finding a new provider.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 8

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ・ Fax: (206) 957-0729

21. In March 2021, Plaintiff's mother called the WISe care coordinator when Plaintiff's behavior escalated to a point where she was concerned for the safety of the family. The care coordinator attempted to talk to Plaintiff by phone, but without onsite assistance, Plaintiff's mother called law enforcement, who took him to a hospital. Plaintiffs' mother did not feel he would be safe to return home, but the hospital discharged Plaintiff and called Child Protective Services (CPS) of DCYF, who then dropped Plaintiff off at his home. The WISe team met to discuss out-of-home placement options, but did not assist in finding personal care services, provide or coordinate behavior support services, or develop a crisis plan.

22. In mid-April 2021, Plaintiff was arrested and charged for spitting on his mother. After charges were dismissed for lack of competency a few weeks later, Plaintiff was civilly committed for 72 hours. Rather than long-term inpatient psychiatric treatment, it was recommended that he be provided with a peer support specialist. He was discharged home in mid-May 2021, but Defendants did not provide him a peer support specialist. Defendants also did not provide him with a functional behavior assessment, behavior supports, or assistance in accessing ABA or personal care services. Defendant Sound prepared a crisis plan for Plaintiff dated June 1, 2021, that listed "baseline" and "triggered/escalated" interventions but did not identify any mobile crisis prevention or response services to be delivered by WISe staff or other familiar individuals.

23. On or about June 3, 2021, Plaintiff escalated again after a WISe therapy session. Law enforcement responded and again took him to the hospital. Plaintiff was boarded in the emergency department for several days while Defendant Sound and DDA conferred about discharge options. DDA requested a neuropsychological evaluation, but Defendant Sound had an eighteen-month waitlist. Defendants CCW and HCA did not provide another option. Plaintiff

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 9

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ・ Fax: (206) 957-0729

was again discharged home with the same services. Defendants did not provide him a functional behavior assessment, behavior supports, or assistance in accessing ABA or personal care services.

24. On or about June 30, 2021, Plaintiff was hospitalized at Seattle Children's Hospital (SCH). He was brought to the emergency department due to posturing and threatening to throw a rock at his mother. By August, the treating clinicians at SCH determined that Plaintiff was ready for discharge and documented their discharge recommendations for an array of behavior supports, trainings, and specialized outpatient therapies.

25. Defendants participated in weekly care coordination meetings but did not discuss how to provide the behavior supports and outpatient services Plaintiff needed for discharge to his own home. For months, Defendants did not provide or arrange for personal care services, even when Plaintiff's mother had explained that she had been unable to find a provider from the list of agencies she had been given. Defendants did not provide for Plaintiff to receive a neuropsychological evaluation. Defendants also did not provide or arrange for Plaintiff to receive a functional behavioral assessment, behavior supports, or ABA services. Instead, Defendants discussed seeking out-of-home group homes and institutions. When all local providers declined his referrals, Defendants began discussing a search for an out-of-state facility.

26. On or about December 15, 2021, a weekly care coordination meeting was held. Plaintiff attended the meeting and repeatedly requested to be discharged home. Defendants' representatives at the meeting acknowledged that they were aware that this had long been his stated preference. His mother stated that she felt she was being "strong-armed" by the Defendants to look for institutional-based care. She explained that although she wanted for her son to come, she did not feel safe to bring Plaintiff back home because there was no plan to

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 10

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ・ Fax: (206) 957-0729

respond to him in a crisis, other than to call a crisis hotline. She explained that calling the crisis hotline did not work in the past due to long wait times and the crisis workers' unfamiliarity with Plaintiff, so she resorted to calling the police. Without additional crisis response services or additional behavior supports, the risk of Plaintiff harming himself or another person is too high for him to be able to safely return home.

27. Defendant Sound had updated the crisis plan in December 2021, but again, there was no provision for any team member from the WISe provider to assist in preventing or responding to an escalation at home. The plan only described strategies for Plaintiff's mother to implement without assistance, with 911 listed as the only outside contact. Defendant Sound stated that they do not offer 24/7 mobile crisis response services through their WISe program. Defendant Sound further stated that they do not provide functional behavioral assessments, behavior plans, or positive behavior supports as direct services through the WISe program.

28. On December 16, 2021, Plaintiff demanded through his counsel that Defendants provide him with the WISe services in accordance with the WISe Manual, including 24/7 mobile crisis services, direct behavior support services, and care coordination.

29. Defendant Birch refused to require or support any WISe providers to deliver the functional assessments and behavior supports that Plaintiff needs. Instead, Defendant Birch stated that Plaintiff could receive ABA services contracted through Defendant CCW and amended the WISe Manual to eliminate specific references to functional behavioral assessments and positive behavior supports.

30. When Defendants began searching for an ABA provider in December 2021, all providers either declined or had waitlists as long as six months. Defendants have not identified

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 11

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ・ Fax: (206) 957-0729

an ABA provider willing and able to serve Plaintiffs, but have refused to provide behavior supports through their WISe program or through a non-ABA behavior support provider.

31. Defendant Sound held multiple meetings to devise a new crisis plan. After Plaintiff's eighteenth birthday, DDA began providing additional funding to Defendant Sound to deliver additional services through a separate program for adults with developmental disabilities. However, Defendants have not developed a comprehensive crisis plan with mobile 24/7 services to prevent and respond to crises.

32. Defendants have requested that DDA place Plaintiff in a Residential Habilitation Center, which is a state-operated institution for individuals with developmental disabilities.

33. Defendants' inordinate delay and failure to coordinate necessary personal care services, to provide for necessary neuropsychological evaluations, to deliver ABA services or intensive positive behavior supports through the WISe program or other non-ABA provider, and to develop and implement a crisis plan that includes 24/7 mobile crisis response services as defined by their own contracts and policy, is resulting in significant and ongoing harm to Plaintiff. Due to Defendants' failures to adhere to their own standards, Plaintiff remains isolated and warehoused on a locked psychiatric unit for seven months longer than necessary. Plaintiff has missed opportunities to attend school, socialize with community members, and to see his family. Plaintiff's mental health is decompensating due to Defendants' actions and inaction.

## VI. CLAIMS FOR RELIEF

**FIRST CLAIM: DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

34. Plaintiff re-alleges the paragraphs above as if fully stated herein.

35. Plaintiff is a "qualified individual with a disability" within the meaning of the ADA, 42 U.S.C. § 12131(2).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 12

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ・ Fax: (206) 957-0729

36. Defendant Birch is a public official of a public entity (HCA) subject to the provisions of the ADA, 42 U.S.C. § 12131(1)(A).

37. The foregoing actions and inactions of Defendant Birch's agency have denied Plaintiff the benefits of HCA's services, programs, and/or activities and have subjected Plaintiff to discrimination by reason of his disabilities in violation of Title II of the ADA and its implementing regulations, 42 U.S.C. § 12132.

38. With respect to Plaintiff, Defendant uses "methods of administration" that have "the effect of defeating or substantially impairing the accomplishment" of its own objectives to support young people with disabilities to live and thrive in their own homes and communities. These methods of administration constitute unlawful discrimination under 28 C.F.R. § 35.130 (b)(3).

39. Defendant Birch is engaging in practices that have resulted in Plaintiff's unnecessary segregation in a restrictive placement that isolates him from his family and peers, and that are placing Plaintiff at risk of further unnecessary institutionalization. These practices violate the "Integration Mandate" and constitute unlawful discrimination under 28 C.F.R. §35.130 (d).

**SECOND CLAIM: DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

40. Plaintiff re-alleges the paragraphs above as if fully stated herein.

41. Plaintiff is a "qualified individual with a disability" within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

42. Defendants HCA, CCW, and Sound receive federal financial assistance and are subject to the provisions of Section 504 of the Rehabilitation Act.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 13

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ∙ Fax: (206) 957-0729

43. The foregoing actions and inactions of Defendants have denied Plaintiff the benefits of Defendants' services, programs, and/or activities and have subjected Plaintiff to discrimination by reason of his disabilities in violation of Section 504 of the Rehabilitation Act and its implementing regulations, 29 U.S.C. § 794(a).

44. With respect to Plaintiff, Defendants use "methods of administration" that have "the effect of defeating or substantially impairing the accomplishment" of its own objectives to support young people with disabilities in their own homes and communities. These methods of administration constitute unlawful discrimination under 28 C.F.R. § 42.503(b)(3).

45. Defendants are engaging in practices that have resulted in Plaintiff's unnecessary segregation in a restrictive placement that isolates him from his family and peers, and that are placing Plaintiff at risk of further unnecessary institutionalization. These practices violate the "Integration Mandate" and constitute unlawful discrimination under 28 C.F.R. §35.130 (d) and 45 C.F.R. § 84.4(b)(2).

**THIRD CLAIM: DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE EARLY AND PERIODIC SCREENING, DIAGNOSTIC AND TREATMENT (EPSDT) PROVISIONS OF THE MEDICAID ACT**

46. Defendant Birch, in her official capacity as the Director of HCA and under color of state law, has failed to provide or otherwise arrange for Plaintiff to receive the early and periodic screening and diagnostic services that would otherwise determine the existence of any physical or mental illnesses or conditions, in violation of 42 U.S.C. §§ 1396(a)(43)(B), 1396d(a)(4)(B), and 1396d(r)(1)(A).

47. Defendant Birch has failed to provide or otherwise arrange for Plaintiff to receive the necessary behavior and mental health services, including intensive, community and home-

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 14

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ᛫ Fax: (206) 957-0729

based mental health services, that would treat or ameliorate his physical or mental illnesses or conditions, in violation of 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43)(C), and 1396d(r)(5).

48. Defendant Birch's actions and omissions described above violate 42 U.S.C. § 1983 by depriving Plaintiff of his statutory rights under the EPSDT provisions of the federal Medicaid Act to receive necessary screening, diagnostic, and treatment services.

## VII. DEMAND FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

1. Declare the Defendants' policies, practices, acts, and omissions violate Plaintiff's rights to receive mental and behavioral health services in the most integrated setting appropriate to his needs under the ADA and Section 504 of the Rehabilitation Act.

2. Preliminarily and permanently enjoin Defendants from continuing to subject Plaintiff to unnecessary warehousing in a hospital and order requiring Defendants to promptly provide medically necessary evaluations and treatment including:

   a. Neuropsychological evaluation;

   b. a functional behavior assessment, a behavior plan, and adequate staff to provide home and community based intensive positive behavior support services to Plaintiff;

   c. 24/7 mobile crisis services to prevent and respond to behavior escalations;

   d. Coordination with personal care providers to address any barriers or training needs in order to ensure personal care hours are effectively delivered.

3. Award to Plaintiff the reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorneys' fees and costs; and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 15

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

4. Grant such other equitable relief as the Court deems just, necessary, and proper to protect Plaintiff from further harm.

DATED: March 9, 2022.

**DISABILITY RIGHTS WASHINGTON**

*/s/ Susan Kas*
Susan Kas, WSBA # 36592
315 5th Avenue South, Suite 850
Seattle, WA 98104
Tel: (206) 324-1521
Fax: (206) 957-0729
Email: susank@dr-wa.org


**LAW OFFICE OF ANDREW S. BIVIANO, PLLC**

*/s/ Andrew Biviano*
Andrew Biviano, WSBA # 38086
1312 N. Monroe, Suite 285
Spokane, WA 99201
Tel. (509) 252-4311
Email: andrewbiviano@me.com

Attorneys for Plaintiff

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 16

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729